FRANCIS CORRY, By next friend, Respondent, v. MAJESTIC MANUFACTURING COMPANY, Appellant.

St. Louis Court of Appeals, January 4, 1916.

1. **MASTER AND SERVANT:** Injury to Servant: Unguarded Machinery: Machines within Statute. A machine for cutting metal, the cutting portion of which consisted of two knives placed one above the other, is, even though operated by foot power, a "machine," within Sec. 7828, R. S. 1909, which provides that belting, shafting, machines, machinery, gearing, and drums in all manufacturing establishments, when so placed as to be dangerous to persons employed therein or thereabout, while engaged in their ordinary duties, shall be safely and se-

curely guarded, when possible; so that a master who failed to guard such a machine, when it was possible to do so, was liable to an employee whose fingers were injured by coming in contact with the knives as a result of the failure to guard the machine.

*Held* by REYNOLDS, P. J., dissenting, that the statute does not apply to a machine of the kind in question, worked solely by foot power supplied by the employee operating the machine, and hence plaintiff was not entitled to recover on the theory that the machine was not guarded.

2. ———: ———: ———: Construction of Statute. Section 7828, requiring belting, shafting, machines, machinery, gearing and drums in manufacturing, mechanical and other establishments to be guarded, under certain circumstances, should be broadly and liberally interpreted and applied, in order to effectuate the benign purpose of its enactment.

*Held* by REYNOLDS, P. J., dissenting, that, while this statute is highly remedial, nevertheless it should not be applied to a situation not within its spirit, nor so construed as to extend it beyond reasonable bounds.

3. **STATUTES: Construction.** In construing a statute, it must be presumed that the lawmakers used common words in their their popular sense and meaning.

4. **MASTER AND SERVANT: Injury to Servant: Unguarded Machinery: Sufficiency of Evidence.** In an action by a servant for injury to his hand from coming in contact with the knives of a machine for cutting metal, as a result of the master's failure to guard the machine, as required by Sec. 7828, R. S. 1909, evidence *held* to show that the machine was so placed as to be dangerous to persons employed about it and that a guard could have been placed upon it, without affecting its operation, which would have served to prevent accidents of the character involved in this suit.

5. ———: ———: ———: Defenses: Custom. It was no defense to an action for injuries sustained by a servant while using a certain machine, that he was using it for a purpose for which it was not designed, where it was shown that he so used it at the direction of the master and that, with the knowledge of the foreman, it had been the custom to so use it.

6. ———: ———: ———: Contributory Negligence. In an action by a servant for injury to his hand from coming in contact with the knives of a machine for cutting metal, as a result of the master's failure to guard the machine, as required by Sec. 7828, R. S. 1909, *held* that plaintiff was not guilty of contributory negligence as a matter of law, by reason of allowing an oily sheet of metal to slip upon the oiled surface of the table of the machine and carry his hand underneath the knives.

*Held* by REYNOLDS, P. J., dissenting, that the evidence established that plaintiff knew that, in applying his greasy fingers to a greasy sheet of metal, sliding on a greasy surface, the sheet of metal might slip and that, if he kept his hand on this sheet, it would carry his hand under the knives, and hence he was guilty of contributory negligence as a matter of law.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

AFFIRMED.

*Percy Werner* for appellant.

(1) The trial court erred in submitting the case to the jury. Section 7828, Revised Statutes 1909, which requires that "the belting, shafting, machines, machinery, gearing and drums" in all manufacturing establishments, when so placed as to be dangerous to persons therein or thereabout while engaged in thir ordinary duties, shall be safely and securely guarded, when possible, has no application to machines which are operated by foot or hand power. Cole v. Lead Co., 240 Mo. 404; Milligan v. Muir, (4 Series), 19 Scot. Sess. Cas. 18. (2) The statute in question has no application to a mere detail or tool proper of a machine, such as a knife blade. Smith v. Forrester Nace Box Co., 193 Mo. 738; Cole v. Lead Co., 130 Mo. App. 253. (3) Plaintiff was guilty of contributory negligence in using the machine for a purpose for which, as he well knew, it was not intended or equipped, and in carelessly pressing down the blade upon his fingers. (4) Even if the statutes applied to a machine operated by foot-power, and to a mere tool thereof, as a knife blade, it (a) has no application where the machine is put to a use other than the ordinary use for which it was intended, designed and equipped; and (b) nor is it competent to show, in order to show the possibility of such a machine so improperly used being guarded,

that some inventive genius has designed what he thinks would prove a proper and an efficient guard which he has applied to a different machine. (5) Instruction number 1, given on behalf of plaintiff, is erroneous in instructing that it was sufficient if plaintiff was using the shears for a purpose authorized by the defendant, irrespective of whether it was the purpose for which the machine was provided. Kelley v. Lawrence, 195 Mo. 75. (6) Refused instructions 3 and 5 requested by the defendant should have been given.

*Albert E. Hausman* for respondent.

(1) The trial court committed no error in submitting this case to the jury. Since the amendment of 1909, all machines are required to be guarded in all manufacturing establishments, when they are so placed as to be dangerous to persons therein or thereabout while engaged in their ordinary duties. Philips v. Hamilton Brown Shoe Co., 178 Mo. App. 196; Austin v. Bluff City Shoe Co., 176 Mo. App. 546. (2) The statute in question (Sec. 7828, R. S. 1909) requires every part of a machine to be guarded, if so placed as to be dangerous to those employed at or about said machine. Austin v. Bluff City Shoe Co., 176 Mo. App. 546. (3) Plaintiff was not guilty of contributory negligence as a matter of law. Dean v. Woodenware Works, 106 Mo. App. 167; Dowling v. Allen, 74 Mo. 13; George v. Railroad, 225 Mo. 364; Wiley v. Gas Co., 132 Mo. App. 380; Zellers v. Mo. Light Co., 92 Mo. App. 107; Brady v. Railroad, 206 Mo. 509; Higberg v. Railroad, 164 Mo. App. 514; Minnia v. Cooperage Co., 175 Mo. App. 91; Brashears v. United Iron Works Co., 171 Mo. App. 507; Lore v. American Mnfg. Co., 160 Mo. 608. (4) If it is possible to guard a machine without interfering with its practical efficiency, the statute requires it to be guarded. Austin v. Shoe Co.,

176 Mo. App. 546; Minnia v. Cooperage Co., 175 Mo. App. 91. And whether it can be guarded is a question for the jury. Daniels v. Goeke, 176 S. W. 301. (5). There was no error in giving or refusing instructions. McCaffery v. Tamm Glue Co., 143 Mo. App. 24; Dunlap v. Mallinckrodt, 159 Mo. App. 49; 1 Labatt on Master and Servant, vol. III, sec. 923.

ALLEN, J.—This is an action to recover for personal injuries sustained by plaintiff, a minor, alleged to be due to the neglect and failure of defendant corporation to guard a certain machine at which plaintiff was working when injured, in alleged violation of section 7828, Revised Statute 1909. The trial below resulted in a verdict and judgment for plaintiff, and the case is here upon defendant's appeal.

Plaintiff, a boy eighteen years of age, suffered an injury resulting in the loss of a finger and portions of other fingers of his right hand, while engaged as defendant's servant in operating a cutting machine in defendant's factory. Plaintiff had been in defendant's employ for about three months. His duties were to cut certain metal sheets into rectangular strips and then to cut off the corners thereof and bend such strips into the required shape. The first of these operations was performed upon a cutting machine or "shears," at which he was working when injured, and which is also referred to as machine No. 1. When cutting a certain "pattern" from such metal sheets, not only were the rectangular strips cut out on machine No. 1, but the corners thereof were also cut off with this machine; but it appears that in cutting the metal for another "pattern" in which work plaintiff was engaged when injured, the corners of the rectangular strips were cut off on another machine specially arranged therefor, known as machine No. 2, when this machine was in working order. However, the evidence adduced

in plaintiff's behalf goes to show that machine No. 2 frequently became dull or out of order, so that it would not cut off the corners of these metal strips, and that under such circumstances this would be done on machine No. 1, after having placed the strips in machine No. 2 in order to mark them for cutting.

Upon the occasion in question plaintiff, he says, cut out certain metal strips on machine No. 1, and went to machine No. 2 to cut off the corners thereof. His testimony is that the latter machine was out of order, and that he therefore marked those strips on this machine and returned with them to machine No. 1, to cut off the corners thereof. This machine, it appears, when operated for the purpose of cutting out the rectangular strips, was fed from the rear; but when it was utilized to cut off the corners of strips, as it was in this instance, it was fed at the front thereof. It was a simple machine for cutting metal of this character, operated by foot power. The cutting portion thereof is said to have consisted of two blades, the lower of these, being fixed in the table upon which the sheets of metal were placed, remained immovable. The upper blade, or knife, was held up, a short distance from the table, by a coil spring at either side of the machine, and was made to descend, when desired, by operating the foot pedal.

The evidence shows that at the time of plaintiff's injury the machine was covered with oil,—a condition in which the machine was purposely kept by defendant, and that the metal strips which plaintiff was holding were themselves very oily and slippery. Plaintiff testified that he placed one of these rectangular strips of metal under the upper blade of the machine, keeping his fingers a few inches back from the blade itself, to cut off one of the corners thereof, and with his foot operated the foot pedal, when the metal strip

slipped forward and his hand went beneath the descending blade, whereby he was injured.

Plaintiff's testimony is that when he began work in defendant's factory, defendant's foreman sent him to an experienced employee, one Melton, telling him to follow Melton's instructions as to doing his work; that shortly thereafter machine No. 2 became out of order, and that Melton, in showing plaintiff how to perform his duties, used this machine to mark the metal strips to show where the corners were to be taken off, and took such strips to machine No. 1 with which the corners were actually cut off; and that Melton told plaintiff that this was "the way to do." And plaintiff's evidence goes to show that he had frequently done this very thing before, when "No. 2" was out of order, and that other employees did this from time to time, all to the knowledge of defendant's foreman. It appears that machine No. 2 was frequently out of order, and that it was customary for plaintiff and others, upon such occasions, to use machine No. 1 for cutting off the corners of the metal strips to be used for the pattern which plaintiff was making when injured. And, as said, the evidence is that in cutting strips for another pattern this machine was regularly used for cutting off the corners.

In behalf of plaintiff there was competent testimony tending to show that this machine could readily have been guarded by putting a strip of metal in front of the cutting blade thereof, supported at each side of the machine, and raised slightly above the table thereof to enable the metal strips, which were fed into the machine one at a time, to pass thereunder. The evidence shows that such a guard could have been very readily and cheaply attached to the machine, and that it would have operated to effectually guard against injuries to the operator thereof of the character here

in question, without in any way impairing the efficiency of the machine.

Appellant insists that the demurrer to the evidence should have been sustained. Appellant's contention is that this machine was not within the purview of the statute (Section 7828, supra), because of the fact that it was a foot power machine. This argument does not appeal to us as being sound. Appellant has pointed us to no case, involving a statute such as this, wherein any such ruling has ever been made. The case of Millugan v. Muir, 19 Scot. Sess. Cas. (4th Series) 18, is based upon a radically different statute, and is no authority for appellant's proposition. Appellant also relies upon what is said in Cole v. Lead Co., 240 Mo. l. c. 404, et seq., 144 S. W. 855. But the language there employed was used with reference to our statute as it stood prior to the amendment of 1909, and when it required only the guarding of "belting, shafting, gearing and drums." And likewise what was said in the dissenting opinion of Woodson, J., in Huss v. Bakery Co., 210 Mo. 44, 108 S. W. 63, adopted in Cole v. Lead Co., supra, and in Simpson v. Iron Works Co., 249 Mo. l. c. 390, 155 S. W. 810, was said of the statute as it stood prior to the amendment, and, aside from this, there is nothing said by the Supreme Court in any of these cases, or elsewhere, so far as we have discovered, which lends any support to appellant's argument.

The statute as it now stands is as follows: "The belting, shafting, machines, machinery, gearing and drums, in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments."

The statute now requires not only belting, shaft-ing, gearing and drums to be guarded, but machines and machinery in general, when such instrumentali-ties are so placed as to be dangerous to persons em-ployed thereabout while engaged in their ordinary du-ties, provided it is possible to so guard them. Noth-ing may be found in the statute indicating that a foot power machine is to be exempted from its operation because of the fact alone that it is so operated. It has been repeatedly held that this statute should be broad-ly and liberally interpreted and applied, in order to effectuate the benign purpose of its enactment. In-deed it is said by the Supreme Court in Cole v. Lead Co., supra, cited by appellant: ''In our judgment this is one of the wisest and most humane statutes to be found upon our statute books, and should be given a broad and liberal interpretation, because it is reme-dial and highly salutary.'' And see Simpson v. Iron Works, supra; Austin v. Shoe Co., 176 Mo. App. 546, 158 S. W. 709.

It must be presumed that the lawmakers used the terms ''machine'' and ''machinery'' in their popular sense and meaning, which would include a machine of the character here in controversy. There is no thought or suggestion in the statute that the partic-ular motive power is material. And in the case of a machine of this general character, there would appear to be no substantial difference in the danger to be in-curred by the operator in operating one driven by me-chanical power and one operated by foot power as was this. Where such a machine as this is run by me-chanical power it is necessary for the operator, either by foot or hand, ''to operate'' it, i. e. to press, by foot or hand, a lever or similar contrivance in order to cause the cutting portion of the machine to descend when required. It would appear to be immaterial whether the operator presses with his foot a lever to

set in motion a "power machine" of this character, or presses a foot pedal and thereby supplies the power which causes the knife to descend. Indeed it is to be inferred from the evidence that in the case before us the very fact that plaintiff had to exert some physical force in order to operate the machine contributed to occasion the slipping of the oily metal sheet with his fingers, whereby he came in contact with the knife.

The argument that, with respect to the duty to guard, imposed by the statute, there is no essential distinction between a machine such as this and a pair of "hand shears" is obviously unsound. Not only is there a vast difference in the danger incurred in the use thereof respectively, but the former is in fact a "machine," as that term is popularly known and used, while the latter is a mere simple tool.

We think it altogether clear that the instrumentality in question is to be regarded as a "machine," within the purview and intendment of the statute. It would indeed be a strained and narrow construction which would exclude it from the operation thereof. And it cannot be doubted that the evidence sufficiently shows that it was "so placed as to be dangerous to persons employed while engaged in their ordinary duties."

The argument that this machine could not be guarded without seriously interfering with the operation and efficiency thereof needs but passing notice. The evidence shows that beyond doubt a simple guard could have been placed thereupon, without in any way affecting its operation, which would have served to prevent just such accidents as this. Appellant says that such a guard would have interfered with the operation of the machine when used to cut off corners of these metal strips; but this finds no support whatsoever in the evidence adduced. On the contrary it appears that the knife blade of this machine was thir-

ty inches in length, and that those metal strips were about two feet in width and three feet long. Manifestly no difficulty would be encountered in trimming off the corners of such strips upon this machine when equipped with a guard of the character mentioned. In any event the evidence is abundant to support the finding of the jury as to this.

A further insistence is that plaintiff was using this machine, at the time, for a purpose for which it was not designed or intended, and for this reason was guilty of such contributory negligence as to preclude a recovery. In view of the evidence touching this phase of the case, referred to above, it is unnecessary to dwell upon the matter. The evidence is that plaintiff had been instructed, by one under whose tutelage he was placed by defendant's foreman, to use this very machine for the purpose for which he was using it when injured, in case machine No. 2 were out of order. And the record abounds with evidence to the effect that this was the course habitually and customarily pursued by plaintiff and other employees as well; and that this was known to defendant's foreman. In this connection see McCaffrey v. Glue Co., 143 Mo. App. 24, 123 S. W. 944. It is altogether clear that plaintiff was not guilty of negligence as a matter of law in using this machine for the purposes shown above.

Nor can it be successfully argued that plaintiff was guilty of contributory negligence as a matter of law in allowing the oily sheet of metal to slip upon the oiled surface of the table of the machine and carry his fingers underneath the knife to his injury. It by no means conclusively appears that plaintiff was guilty of negligence in the premises—irrespective of the fact that he was a boy eighteen years of age. The statute was designed, in part at least, to prevent injury to an employee because of just such slips and ac-

cidents which may precipitate him or some portion of his person into a machine or machinery, to his injury.

Some criticism is made of an instruction given for plaintiff, but it is so obviously without merit as not to warrant discussion. And errors assigned to the action of the court in refusing instructions offered by defendant are disposed of by what we have said above.

The judgment should be affirmed, and it is so ordered. *Nortoni, J.,* concurs; *Reynolds, P. J.,* dissents in an opinion filed.

### DISSENTING OPINION.

REYNOLDS, P. J.—I find myself unable to agree to the conclusion reached by my learned associates in this case.

In the first place, I do not think that this piece of machinery operated solely by foot power, that foot power applied and put in motion by the operator himself, connected in no manner whatever with any other machinery in the building, falls within the provisions of section 7828, Revised Statutes 1909. That this section is highly remedial and one of the wisest laws ever enacted in our State, I have no doubt. So our court and the Supreme Court held in several cases, and so the writer distinctly recognized, as see Austin v. Bluff City Shoe Co., 176 Mo. App. 546, l. c. 565, and authorities there cited (158 S. W. 709). But that does not mean that it is to be so construed as to extend it beyond reasonable bounds or to apply it to a situation not within its spirit. To require a machine of the kind in question, worked solely by foot power, that power to be applied and the machine put in motion by the operator himself, to be guarded, seems to me is as untenable and unreasonable as to hold that, when an employee is operating a grindstone by his own foot power there should be a guard placed in

front of it to prevent his fingers slipping on to the stone while he is himself turning it in sharpening a knife. I concede that the evidence in this case tends to show that this machine could have been guarded, but that is beside the question: that question is, does this section of the statute require this kind of machine, so operated, to be guarded? I do not think that on any proper construction of that statute, even giving it the most liberal possible construction, it is intended to require a guard on a machine of this kind and operated as was this machine.

Furthermore, I think that plaintiff is debarred from recovery by his own negligence, directly contributing to the accident. His age in this instance has nothing whatever to do with that. He was eighteen years of age; he shows by his testimony that he was possessed of all the intelligence necessary to enable him to look out for his own safety in operating a machine of this kind, and even if he had been a much younger boy, he certainly knew, when he was working with a piece of sheet metal which was itself covered with grease and was working on a greasy surface, that it was apt to slip. He was the one without whose act the machine could not have been put in motion and he must have known that, applying his greasy fingers to a greasy piece of metal, sliding on a greasy surface, it might slip and that if he kept his hand on the sheet of metal it was apt to slip under the knife and be cut.

I think the judgment of the circuit court in the case should be reversed outright on these two grounds.