JOSEPH LUMATZ, Appellant, v. AMERICAN CAR & FOUNDRY COMPANY, a Corporation, Respondent.*

St. Louis Court of Appeals.   Opinion filed June 18, 1925.

1. **DANGEROUS AND UNGUARDED MACHINERY: Machines: Statute: Construction: Power-Driven Emery Wheel Regarded as Machine.** The term "machines" as used in section 6786, Revised Statutes 1919, requiring machines and machinery when so placed as to be dangerous to employees in or thereabout, to be safely and securely guarded, in view of section 7058, is to be construed as including every mechanical device or combination of mechanical powers and

Lumatz v. Am. Car & Foundry Co.

devices to perform some function or to produce a certain effect or result, and *held* in the instant case, that the power driven emery wheel, at which plaintiff was working at the time he met with his alleged injuries, is to be regarded as a machine within the purview and intendment of the statute.

2. **MASTER AND SERVANT:** Servant Injured: Negligence: Dangerous and Unguarded Machinery: Statute: Construction: Evidence: Case for the Jury. In a suit for damages for personal injuries sustained by an employee while roughing up a power-driven emery wheel by means of a tool dresser or trimmer, on or about which plaintiff, in the scope of his ordinary duties, was required to work, evidence that the emery wheel was dangerous to him while he was trimming it with the trimming tool, and that same was unguarded in violation of section 6786, Revised Statutes 1919, requiring all machines and machinery in factories that are so placed as to be dangerous to employees in or thereabout, to be safely and securely guarded when possible, *held* sufficient to entitle him to go to the jury on the issue of the defendant's negligence as for a violation of the guarding statute, the emery wheel being a machine within the purview and intendment of the statute.

3. **TRIAL PRACTICE:** Remarks of Court: Telling Jury Not to Consider Statements of Counsel as Evidence: Not Error. Section 1417, Revised Statutes 1919, which provides that, when the evidence is concluded, and before the case is argued or submitted to the jury or to the court sitting as a jury, either party may move the court to give instructions on any point of law arising in the case which shall be in writing, is viewed as having reference to the instructions upon "points of law arising on the issues in the case," and does not apply to a verbal admonition of the trial court given during argument, telling the jury that in arriving at a verdict, they must be guided solely and only by the evidence heard from the witness stand, and that what counsel say is not evidence and is not to be considered as evidence.

*Headnote 1. Machine, 38 C. J., p. 330; Master and Servant, 26 Cyc., p. 1134; 2. Master and Servant, 26 Cyc., p. 1463; 3. Trial, 38 Cyc., p. 1765.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. William H. Killoren*, Judge.

REVERSED AND REMANDED.

*John E. Turner* and *Earl M. Pirkey* for appellant.

(1) The statement requiring the guarding of dangerous machinery should be given a liberal construction. Carry v. Majestic Manufacturing Company, 193 Mo. App. 85; Ebert v. Emerson Electric Mfg. Co., 264 S. W. 453. (2) A plaintiff is not required to prove all the allegations of negligence alleged but he can recover if what he does prove is within the pleadings and makes a case. Underwood v. Railway, 177 S. W. 728, par. (9); Wessel v. Lavender, 262 Mo. 429; Campbell v. Railroad, 121 Mo. 348; Hartpence v. Rogers, 143 Mo. 632; Nitchman v. Railroad Co., 203 S. W. 493. (3) An instruction that statements of counsel are not evidence is improper where counsel have made admissions. Moss v. Shells, receiver, 249 S. W. 411. (4) Oral instructions are improper. Belk v. Stewart, 160 Mo. App. 710; State v. Shipley, 174 Mo. 513; McDonnell v. G. B. Peck D. G. Co., 228 S. W. 759.

*Watts & Gentry* for respondent.

*G. A. Orth* of counsel.

(1) The plaintiff's case ought never to have gone to the jury, but should have been terminated by demurrer to the evidence, and, therefore, even if there were technical errors they become wholly immaterial and do not justify the granting of a new trial. Lomax v. Railway, 119 Mo. App. 192; Mockowik v. Railroad, 196 Mo. 550; Bradley v. Forbes Tea & Coffee Co., 111 S. W. 919; Moore v. Railway, 176 Mo. 528; Wagner v. Edison Elec. L. Co., 177 Mo. 44. (2) The court's remark to the jury to-wit: "What counsel say to you is not evidence and is not to be considered by you as evidence. They make their argument for the purpose of trying to help you arrive at a verdict, but the fact that they make a statement and if it differs from the evidence that you hear from the witness stand, you are to be guided by the testimony as you hear it from the witness stand," could not have misled the jury into believing that some ad-

mission made during the introduction of the evidence was to be disregarded, and that evidence would be necessary to take the place of such admission. Besides, the very exception that plaintiff's counsel saved at that time showed that his sole ground of complaint was that the court was giving any sort of oral instruction to the jury, and he did not point out the particular ground which he now urges as his objection to such remarks. (3) The remarks by the court do not constitute such oral instructions as are prohibited by statute. Baxter v. Magill, 127 Mo. App. 392. Plaintiff's counsel himself had asked the court to give a similar oral instruction and, therefore, he cannot complain now that the court did just exactly what he had asked the court earlier in the trial to do. If there was any error in this respect, it was self-invited error, and the courts always hold that no reversal should be had on account of self-invited error. Knox v. M. K. & T. Ry. Co., 203 S. W. 225; Hogan v. Hinchey, 195 Mo. 527; Tie & Timber Co. v. Drainage Dist., 226 Mo. 420.

BECKER, J.—This is a suit for damages for personal injuries. Plaintiff worked for defendant as a laborer and chipper at its manufacturing plant in the city of St. Louis. At this plant the defendant had as a part of its equipment several large power driven emery wheels. Grinding steel tools on the emery wheels wore them smooth, making it necessary that they be roughened up from time to time. One of the duties of plaintiff in the course of his employment was to roughen up these emery wheels. This work necessitated plaintiff taking a tool dresser in both his hands, press the tool against the rapidly revolving emery wheel, thereby wearing off the emery wheel evenly and tending to roughen it up.

Plaintiff's testimony was to the effect that the operation of roughing up the emery wheel would at times cause the dressing tool to jerk or jump, occasionally throwing his hand nearest the end of the dressing tool

217 M. A.—7.

against the emery wheel; that when this occurred the skin on his hand at the place of contact would rub off; that the grinding contact of the dresser and the emery wheel resulted in particles of material being thrown against his hand, and that on the occasion in question, while he was roughing an emery wheel, a minute piece of steel was thrown against and into the forefinger of his left hand at a place where the skin had been rubbed off, with the result that infection set in, necessitating the finger being operated on repeatedly and the end thereof to be amputated.

The petition alleges negligence in failing to guard as required by statute, and common law negligence. The answer is a general denial and a plea of contributory negligence in failing to promptly report his injury and get proper medical attention. The reply is a general denial. The trial resulted in a verdict and judgment for defendant, and plaintiff in due course appeals.

The court ruled that the "dresser" was not a "machine" in contemplation of the statute and at the trial excluded the evidence offered by plaintiff to sustain his allegation of a statutory failure to guard dangerous machinery on the ground that the statute did not apply to the situation in hand. It is here urged on appeal that the emery wheel and the dresser when used together in the operation of dressing down the emery wheel constituted a machine within the purview of the statute and that the said ruling of the court was consequently erroneous.

The statute, section 6786, Revised Statutes of Missouri, 1919, provides that the belting, shafting, machines, machinery, gearing and drums in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout, while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible then notice of its danger shall be conspicuously placed in such establishment.

Of this statute our supreme court in Coles v. Lead Co., 240 Mo. l. c. 414, 144 S. W. 855, said: "In our judg-

ment this is one of the wisest and most humane statutes to be found upon our statute books and should be given a broad and liberal interpretation because it is remedial and highly salutary.''

Section 7058, Revised Statute of Missouri, 1919, pre-scribing rules for construing statutes, provides that ''words and phrases shall be taken in their plain or ordinary and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be construed according to their technical import.'' It must be presumed that the lawmakers used the terms ''machines'' and ''machinery'' in their ''plain or ordinary and usual manner.'' The term ''machine'' has often been held to include every mechanical device or combination of mechanical powers and devices to perform some function or to produce a certain effect or result. [Pittsburgh Reduction, etc., Co. v. Cowles Electric Smelting, etc., Co., 55 Fed. 1. c. 316; Corning v. Burden, 56 U. S. 252, 1. c. 267; Central Trust Co. v. Sheffield, etc., Ry. Co., 42 Fed. 106, and cases therein cited.]

We are satisfied it will take no argument to sustain our ruling that the power driven emery wheel at which plaintiff was working at the time he met with his alleged injuries is to be regarded as a machine within the purview and intendment of the statute.

According to plaintiff's petition, and the evidence adduced on his behalf, it was part of plaintiff's duties at least two or three times a week to dress down and roughen up the emery wheel in question. The customary method of doing this work was for plaintiff to take an appliance which is termed a dressing tool or dresser, an instrument approximately two feet long with a steel head, in the end of which some half dozen iron circles or small revolving wheels the size of a silver dollar are fastened; by pressing this dresser against the grinding surface of the rapidly revolving emery wheel and moving the dresser back and forth, it caused the emery wheel to be trimmed straight and at the same time to become rough-

ened up so as to make it more serviceable in trimming and sharpening tools, etc.

It is undisputed that plaintiff in the course of his employment was required, at least several times a week, to trim or dress down this emery wheel and that the method employed for this work was for plaintiff to use a dresser of the kind and character described above. The defendant introduced in evidence a dressing tool similar to the one used by plaintiff at the time he met with his alleged injury. As to this exhibit Fred Brant, foreman of the defendant's chipping room, and under whom plaintiff was working at the time in question, was asked:

"Now, I notice this tool has a piece of what appears to be sheet iron or maybe a little heavier than sheet iron near the end where the little wheels are. What is that used for, do you know?"
He replied:

"That is for a guard, just a little guard over there in case anything comes up it can't hurt him."

And we quote the following from the cross-examination of this witness:

"Q. My question is, what is it called? A. Well, just a guard, supposed to be a little guard over there."

"Q. What is it put there for? A. Just for a guard in case anything comes up, to keep it from jumping up."

"Q. That is, because in using it, pieces will come up and strike the man and this is there to keep it from it? A. There might be something come up, emery or something like that when you are dressing it. It can come up."

"Q. When you use one of these dressers to press against an emery wheel, sometimes a piece of steel comes off and sometimes emery, doesn't it? A. Well, emery comes up but most of the metal goes down."

"Q. It can happen that both emery and splinters of metal may come up, but if this guard wasn't there it may hurt the person? A. Yes, sir."

"Q. And the company, in order to protect the men from being hurt, put this on there, didn't they? A. Yes, sir."

"Q. That is the purpose of it? A. Yes, sir."

"Q. And they did that because they knew there was danger of getting hurt if they didn't have it there, didn't they? A. Well, it is a good way to have them on because they have to have something on there just to guard, you know, that is what they want, always put something over it."

As to the dresser which plaintiff was using at the time he alleges he met with his injuries, plaintiff himself testified repeatedly that there was no guard of any kind attached to it.

In light of the record before us, whether the statute can be invoked by plaintiff is in our view not to be determined alone by whether or not the trimming tool in itself may be classified as a "machine" or "machinery" but rather by the broader question as to whether the power driven emery wheel on or about which plaintiff in the scope of his ordinary duties was required as often as three times a week to work in connection with the trimming tool, was dangerous to him at such times, and if so whether it could have been guarded as contemplated by the statute. There is abundant testimony to the effect that the emery wheel was dangerous to plaintiff while he was trimming it. This is best evidenced by the fact that defendant's own witness testified that because of the danger of particles of metal and steel flying off the wheel while trimming it, the defendant put a guard upon the trimming tool.

The fact that the guard was placed upon the trimmer as being more practical or more effective rather than placing it directly on the emery wheel itself, does not in our own view affect the conclusion above stated, for what the statute contemplates is protection and safety for workmen and to that end it requires all machines and machinery in factories that are so placed as to be dan-

gerous to employees in or thereabout, to .be safely and securely guarded when possible, but whether the guard should be directly attached to the machine itself or whether the guard should be a device separate and apart therefrom or whether, as in the instant case· the guard be attached to a tool or appliance used in connection with the machine, is a matter that is to be determined upon the facts and circumstances of each particular case.

Our Supreme Court in the recent case of ·Simon v. St. Louis Brass Mfg. Co., 250 S. W. 74, l. c. 76, ruled that "a machine is dangerous in such sense that the employer is required to guard it 'if in the ordinary course of human affairs danger may be reasonably anticipated from the use of it without protection.' [Hindle v. Bertwistle, 1 Q. B. 192.] To 'guard' such a machine is to provide it with a guard; that is, any device, fixture or attachment designed to protect or secure against injury from it. [Bessler v. Laughlin, 168 Ind. 38, 79 N. E. 1033.]"

It would readily be conceded that if the tool, appliance or device called a "trimmer" was in some manner attached to the emery wheel itself instead of being unattached, that the guarding statute ·would apply. Since that is true, having in mind the legislative intent, we are unwilling to hold that merely because the "trimmer" was not an integral part of the emery wheel itself the statute would not apply.

It follows from what we have said above that in our view and we so rule, plaintiff, under the petition and· facts adduced herein, made out a case entitling him to go to the jury on the issue of defendant's negligence as for a violation of the guarding statute. [Simon v. St. Louis Brass Mfg. Co., supra; See also Corry v. Majestic Mfg. Co., 193 Mo. App. 77, 181 S. W. 1076, and cases therein cited.]

The court gave written instructions to the jury at the close of the case. Thereafter counsel for defendant objected to certain statements made during the argument of plaintiff's counsel. As a result of this objec-

tion an extended cross fire of banter and sarcasm ensued between counsel for plaintiff and defendant. At the conclusion of the oral pyrotechnics the court said orally:

"Gentlemen of the jury, you will understand that you are to be guided solely and only in arriving at a verdict in this case by the evidence that you hear from the witness stand. What counsel say to you is not evidence and is not to be considered by you as evidence. They make their argument for the purpose of trying to help you in arriving at a verdict, but the fact that they make a statement and if it differs from the evidence that you hear from the witness stand, you are to be guided by the testimony as you hear it from the witness stand."

Thereupon counsel for plaintiff excepted "to the remarks of the court on the ground that it is an oral instruction to the jury and that all instructions must be in writing." The point is without merit.

In our view section 1417, Revised Statutes of Missouri, 1919, which provides that when the evidence is concluded and before the case is argued or submitted to the jury or to the court sitting as a jury, either party may move the court to give instructions on any point of law arising in the cause which shall be in writing, must be viewed as having reference to the instructions upon "points of law arising on the issues in the case." If the point here sought to be raised were well taken, the court, upon adjournment for the day during the progress of the trial of a case, would have to give the jury a written instruction instead of the usual oral admonish ment which has been given to juries from time immemorial as to their duty to withhold their judgment in the case until all of the evidence is in and cautioning them from permitting any person to talk to them or engaging in conversation with each other with reference to the merits of the case. Furthermore, if the point here sought to be made were well taken, should a withness give an answer not responsive to a question and an objection be made thereto and a request made that the same be

stricken out and the jury instructed to disregard it, the judge would be required to do this in writing. Or where one of the attorneys in the case, during its progress, made a statement subject to exception, the court could not meet the situation upon proper objection excepting in writing. Again the court's remarks were specifically directed to what the attorneys in the case had said to the jury in "their argument." In our view the remarks of the court could not have been construed by the jury as applying or having reference to any admissions formally made by either counsel during the progress of the trial.

The learned trial judge, in light of the said colloquy between counsel during the argument of plaintiff's counsel to the jury not alone committed no error in giving the jury a verbal admonition, but in our view would have been derelict in his duty if he had not met the situation just as he did. It follows that we rule this point against appellant. [See Baxter v. Magill, 127 Mo. App. 392, l. c. 400, 105 S. W. 679.]

For the error noted above the judgment should be reversed and the cause remanded. It is so ordered. *Daues, P. J.,* and *Nipper, J.,* concur.