HAROLD WILLS, Respondent, v. ANTOINETTE SUL-
LIVAN, Appellant.

In the Kansas City Court of Appeals, June 12, 1922.

1. **APPEAL AND ERROR:** Bill of Exceptions: Record Held to Suf-
ficiently Disclose Filing of Bill of Exceptions to Enable Appellate
Court to Review Matters of Exception on Appeal. Filing of Bill of
Exceptions as required by rule 26, of the Court of Appeals, *held*
sufficiently shown to review matters of exception on appeal where
the record disclosed that within the time allowed by the court,
defendant presented her Bill of Exceptions, and the same being
found correct was allowed and signed by the court, and by its
order duly entered of record, ordered and directed that said Bill
of Exceptions be filed and made a part of the record, and im-
mediately after this showing in the abstract of the record proper
a statement that the Bill of Exceptions was marked filed by the
clerk.

2. ————: Statement and Brief Marshalling Points in Such Manner
as to Enable Court to Grasp Questions Presented, Held, Substantial
Compliance with Court Rules. Under appellate court rules 15 and
16, a statement and brief, disclosing that the points are marshalled
in such manner as to enable the court to grasp satisfactorily the
questions presented and defendant's position relative thereto pre-
sents a substantial compliance with the rules.

3. ————: Evidence: Objection Made on Appeal to Evidence Admitted
Without Objection Cannot be Considered. Where evidence was
given without objection and no motion made to strike out, an ob-
jection thereto made on appeal cannot be considered.

4. **EVIDENCE:** Evidence of Certain Acts of Boy Suing for Damage
for Assault, Held Inadmissible. In an action by an orphan boy
against a married woman, with whom he had been residing, to
recover damages for assault, the court did not err in refusing to
permit defendant, on cross-examination, to question plaintiff
relative to an attempt of plaintiff to "get into C's cellar," or the
cellar of a certain other person on the ground that the boy was
incorrigible and that such evidence went to the credibility of
plaintiff since such evidence would not show incorrigibility and
was immaterial because defendant denied ever having punished
plaintiff.

Wills v. Sullivan.

5. **WITNESSES: Impeachment:. Witness Cannot be Impeached by Proof of Specific Acts.** A witness may not properly be impeached by proof of specific acts, under the well-known rules of evidence.

6. ———: **Credibility: Evidence of Ill Feeling or Unfriendliness Admissible to Show Bias as Bearing upon Credibility of Testimony, but Not Details Involved in Trouble.** Evidence that ill feeling, or unfriendliness, had arisen between defendant and any witness who testified against her would be admissible to show bias and as bearing upon the credibility of the testimony, but this would not entitle defendant to introduce evidence as to facts, or details, involved in the trouble or the unfriendliness.

7. **APPEAL AND ERROR: Evidence: Objection to Exclusion of Evidence Cannot be Reviewed on Appeal Where There Was no Offer to Show What Witness Would Have Testified to.** Where there was no offer to show what the witness whose testimony was excluded would have testified to, complaint cannot be made on account thereof, as it does not appear whether the evidence might have developed anything that was material.

8. ———: ———: **There was no Error in Exclusion of Evidence Where Matter was Gone into Fully on Cross-examination of Other Witnesses.** Objection cannot be made as to exclusion of evidence of a witness where the record shows that the matter was gone into fully on cross-examination of other witnesses.

9. **EVIDENCE: Defendant Held to Hove Abandoned Her Position Relative to Admission of Contract in Evidence.** Where defendant abandoned her position relative to the introduction in evidence of the contents of a certain contract, tending to show relationship of parent and child, there was no basis for the complaint that court excluded the same, as the court on its offer advised the introduction of other evidence and stated if the contract thereby became admissible .it would be admitted; defendant not thereafter offering the contract.

10.. ———: **Pleading: Defendant Could not Complain of Refusal to Permit Her to Testify as to Times When She Corrected Plaintiff and Reasons Therefor, Where in Her Answer and Testimony She Denied That She Had Ever Assaulted Plaintiff.** Where defendant in her answer denied that she had committed any assault on plaintiff, and in her testimony denied that she had administered corporal punishment to him at any time, defendant could not complain that court erred in refusing to allow her to testify as to the times when she corrected plaintiff and the reasons therefor, and especially where the record shows that her counsel withdrew his objections to the ruling of the court on this point.

11. ———: Relevancy: Evidence as to Conversation Between Parties to Show That Injuries Were Received Before Assault, Held, Inadmissible Where Defendant Denied Conversation. In an action by an orphan boy to recover damages for assault, the court did not err in refusing to allow defendant to testify to a conversation between her and plaintiff relative to plaintiff's treatment in the Children's Home in New York, on the ground that it might have developed that plaintiff received his injuries before he came to defendant's home, and that such injuries might have existed prior to the time of which he complains, where there was no offer of proof as to what the conversation was, or showing that it had any bearing on the case, and defendant had testified that she had never had any conversation with plaintiff concerning the particular injuries which he claimed to have received.

12. ———: Witnesses: Where Testimony Assailed as of Recent Fabrication, Similar Statements Made of the Transaction When Motive of Interest Did not Exist and Before Effect of Such Statements Could Have Induced a Different Account, Held Admissible. Where defendant contended that plaintiff's story is of recent fabrication, or that he had some motive for testifying falsely, proof that he gave a similar account of the transaction when the motive did not exist, before the effect of such account could be foreseen, or when the motive of interest would have induced a different statement, is admissible.

13. ———: Res Gestae: Where Plaintiff Refrained from Making Complaints as to Defendant's Treatment of Him Because in a State of Duress and Fear, Statements Made by Him Concerning Same Immediately After Removal of Restraint, Held Admissible as Part of Res Gestae. Where evidence showed that plaintiff while residing at home of defendant was held in a state of duress and fear, and because of such fear and duress he refrained from making complaints and was not permitted to speak his mind freely until all such causes had been removed, statements of plaintiff concerning defendant's treatment of him made immediately after such restraints were removed are, in the very nature of things a part of the *res gestae.*

Appeal from the Circuit Court of Pettis County.—*Hon. H. B. Shain,* Judge.

Affirmed.

*Holmes Hall* and *W. D. O'Bannon* for respondent.

*W. D. Steele, George F. Longan* and *D. E. Kennedy*
for appellant.

ARNOLD, J.—This is a suit in damages for assault.
The petition contains four counts each of which prays
damages for an assault made upon plaintiff by defendant.

Defendant is the wife of · Dan Sullivan, a farmer
residing near Lamonte in Pettis County, Missouri. Plain-
tiff is an orphan who was born in the City of New York
and who, together with his brother George, his sister
Madeline and other children, was brought to Pettis Coun-
ty in February, 1913, by one J. W. Swan, a minister rep-
resenting, as agent, the Children's Aid Society of New
York. The purposes of said society included the finding
of homes for homeless children, and in the furtherance
of such purpose plaintiff, then about fifteen years of age,
was placed in the home of defendant and her husband in
February, 1913. He continued to reside with them for
a period of about four years when he left and went to the
home of one George Wagner, Sr., also a farmer residing
near Lamonte.

The petition charges in the first count that on the
—— day of July, 1913, defendant, without just cause
or provocation, wilfully, wrongfully and maliciously as-
saulted and beat plaintiff by striking and beating him
on his bare body with a strap, to his great injury. The
second count charges that on or about the 15th day of
March, 1914, defendant, without just cause or provoca-
tion, wilfully wrongfully, maliciously and unlawfully as-
saulted, beat and wounded plaintiff by striking and beat-
ing him on his bare body with a large and heavy piece
of wood. The third count charges that on or about the
—— day of May, 1915, without just cause or provocation,
defendant wilfully, wrongfully, maliciously and unlaw-
fully assaulted, beat, wounded and maimed plaintiff by
striking and beating him over the head and over his
body with a large and heavy strap equipped with a heavy
iron buckle and snap; that defendant struck plaintiff
on the head with said strap and buckle and that the buckle

of said strap struck plaintiff in the left eye, thereby permanently injuring and destroying said eye, and causing the permanent loss of the sight of said eye.

The fourth count charges that on or about the —— day of July, 1915, without just cause or provocation, defendant wilfully, wrongfully, maliciously and unlawfully assaulted, beat, maimed and wounded plaintiff by beating him over the head with a stove lifter, and by assaulting, beating and hitting him over the head and body with a stick of wood, and by striking and beating plaintiff on the head and on his left ear, knocking him down and permanently maiming and injuring plaintiff's left ear and permanently injuring the hearing thereof. Damages both actual and punitive are prayed in each count.

The answer is a general denial of the charges in each of the four counts; and, as further answer, it is alleged that plaintiff was placed in her home by the Children's Aid Society of the State of New York, under a contract and agreement under the terms of which plaintiff became a member of the family of defendant, to be provided for and treated as a member thereof; that during all the time plaintiff was a member of her family, she performed her duties and exercised her authority as parent of plaintiff and treated him at all times with kindness and affection, "and at no time during said times administered to plaintiff any punishment which was unreasonable or beyond what was necessary and proper for a parent to use and administer in efforts to discipline a child."

The reply was a general denial.

The cause was tried to a jury and the verdict was in plaintiff's favor, as follows: On the first and second counts, $500 each, or $375, actual and $125 punitive damages; and on counts three and four, each $1875 actual and $625 punitive damages. Judgment therefor was accordingly entered. A motion for new trial filed in due time was overruled and defendant brought the case here by appeal.

At the threshold of this case we are confronted with a motion to affirm the judgment for the following reasons: (1) That the abstract of the record does not

show that any Bill of Exceptions was filed as required by Rule 26 of this court; (2) that the brief filed by defendant does not contain in numerical order the points or legal proofs relied on, as required by Rule 15 of this court; (3) that the statement filed by defendant does not consist of a clear and concise statement of the case without argument or reference to issues of law, as required by Rule 16 of this court; (4) that the statement is not followed by any brief containing a statement of points upon which defendant relies for a reversal of the judgment; and (5) that the whole instrument denominated "Statement and Brief" purports to be a statement only, and is an instrument in which is intermingled statements of alleged facts, statements of the contentions of the parties and a collection of what are denominated rulings on introduction of testimony.

As to point 1, it is only necessary to say the record discloses that on the first day of the October Term of the court, to-wit, on October 3, 1921, and within the time allowed by the court, defendant presented her Bill of Exceptions, and the same being found correct was allowed and signed by the court, and by its order duly entered of record, ordered and directed that said Bill of exceptions be filed and made a part of the record in said cause. Immediately after this showing in the abstract of the record proper appears a statement that the said Bill of Exceptions is marked filed by the clerk. We think this is a sufficient showing that the Bill of Exceptions was filed to enable us to review matters of exception on appeal.

As to points 2, 3, 4 and 5, of said motion, an examination of the brief and statement complained of discloses that the points are marshalled in such manner as to enable this court to grasp satisfactorily the questions presented and defendant's position relative thereto. We hold, therefore, that the statement and brief presents a substantial compliance with the rules of this court. The motion to affirm the judgment because of insufficiency of the abstract is overruled.

The first charge of error made by defendant is that the admission in evidence of the testimony of plaintiff to the effect that the husband of defendant stood by and saw defendant whip plaintiff, and that the husband also assaulted plaintiff, was improper. In support of this charge defendant urges that inasmuch as her husband was not charged with having beaten plaintiff and was not a party defendant, said testimony was highly prejudicial to her.

The record shows that this testimony was received without objection of counsel until the following questions were asked and answered:

"Q. What was her husband doing. A. He was standing there watching me, and I had to take the beating. And he knocked me down and stomped me.

JUDGE KENNEDY (counsel for defendant): We object to anything Daniel Sullivan did.

MR. O'BANNON: They were both present and she is absolutely liable.

JUDGE KENNEDY: No, we tried that out in the original petition.

MR. O'BANNON: We didn't do anything of the kind. We had it in the original petition that you could sue him for both wrongs, but under this petition the act of one of them is the act of both of them.

THE COURT: Well, it is in, and the jury has heard it.

To which action and ruling of the court the defendant, by her attorneys, then and there duly excepted at the time and still excepts."

Defendant failed to move to strike out, and as the testimony complained of was given without objection, up to the point indicated in the above colloquy, she is not now in position to complain. We rule against defendant on this point.

Defendant also charges error in that the court refused to permit defendant, on cross examination, to question plaintiff relative to an attempt of plaintiff to "get into Dennis Connor's cellar" Also the same charge of

error is made relative to the refusal of the court to permit defendant to cross question plaintiff as to an alleged attempt made by him to break into the cellar of "Grandma" Sullivan. Defendant contends that such evidence was proper because the boy was incorrigible and also that such evidence went to the credibility of plaintiff.

We cannot agree with this contention, first, because the two things sought to be proved would not show incorrigibility. Next, the evidence was immaterial. It was not offered to justify any whipping defendant may have given him, since defendant denies ever having punished him at all. Moreover, it is not properly a matter of impeachment. A witness may not properly be, impeached by proof of specific acts, under the well known rules of evidence.

Further, error is charged in that the court refused to admit evidence as to trouble between defendant and others over the appointment of a postmaster at LaMonte, Mo. Defendant attempts to support this contention by arguing that the evidence might have developed that a conspiracy existed between plaintiff and the people who were instrumental in having the suit instituted.

Evidence that ill feeling, or unfriendliness, had arisen between defendant and any witness who testified against her would be admissible to show bias and as bearing upon the credibility of the testimony. But this would not entitle defendant to introduce evidence as to the facts, or details, involved in the trouble or the unfriendliness. Besides, there is no offer to show what the witness whose testimony was excluded would have testified to, and hence we cannot tell whether the evidence might have developed anything that was material or not. Moreover, the record shows that this matter was gone into fully on cross examination of plaintiff's witnesses. We fail to see any merit in this contention.

Error is charged also in that the court refused to permit defendant to prove by her own testimony the contents of a contract she had with the Children's Aid Society through which she secured plaintiff, because

such contract, if admitted, might prove the relationship of parent and child existed between plaintiff and defendant.

We do not see any basis for this complaint as the record shows the court did not exclude this testimony and that defendant abandoned her position relative thereto. On this question the court said to defendant's counsel:

"Put on the evidence of what was done on these occasions, Judge, and if that (the contract) becomes admissible, I will admit it. It does not make any difference if it is admissible, it will be permitted at the proper time."

J. W. Swan, the agent of the Society through whom defendant secured the boy, testified fully on that point after the court ruled the evidence admissible. Defendant's testimony as to her contract was not thereafter offered. Further defendant complains that the court erred in refusing to allow her to testify as to the times when she corrected plaintiff and the reason therefor.

This position is untenable for the reason that defendant, in her answer, denied that she had committed any assault on plaintiff, and in her testimony she denied that she had administered corporal punishment to him at any time. Furthermore, it is of record that her counsel withdrew his objections to the ruling of the court on this point. During the direct examination of defendant, the following colloquy concerning this matter took place:

"Q. Now, I will ask you whether at any time in conjunction with your husband you ever put any cold water on him, or had him strip, or anything like that? A. No, not at night. I threw water on him once, but not at night, and my husband wasn't there.

Q. What occasion did you have for throwing cold water on him? A. Well, I put him to cleaning one of his places where he had been hiding eggs—

Mr. O'Bannon: I object to that, if your honor please.

Wills v. Sullivan.

THE COURT: Gentlemen, the court will hold this: That this lady has denied each and every allegation, and positively denied that there was any truth in any of these allegations. What the other relations were there, I don't think have anything to do with it.

To which action and ruling of the court the defendant, by her attorneys, then and there duly excepted at at the time and still excepts.

"Q. Did you strip him off and pour water on him? A. No, I did not.

MR. O'BANNON: I object to that.

THE COURT: She may answer that. He swore she did, and she may answer as to that. She says not. Anything they claim you did, you may answer. Now, Gentlemen, as to the document you are offering in evidence, unless there comes some other reason for it, the court holds it absolutely incompetent to any issue in this cause, because her evidence is she never chastised him on any of these occasions.

MR. STEELE: But suppose the boy says she did?

MR. O'BANNON: Now, if we are going to have an argument here, I want the jury excluded.

THE COURT: Oh, well, that isn't necessary.

MR. STEELE: The boy says she did punish him, and as to the reasonableness of it or unreasonableness, the document, I understand—I haven't read it—

THE COURT: Mr. Steele, if you would have any evidence to come in here and show that he was chastised at all on those dates then whether it came within the bounds of—

MR. STEELE: But he says he was chastised on those dates.

MR. O'BANNON: And she says he wasn't.

MR. STEELE: That makes the issue.

THE COURT: The only way you can bring that in here is to show that the chastisements would come within what a parent would have a right to do, and you are not trying to do it. You are denying the whole thing.

MR. STEELE: As I understand, the purpose of the document was to show the jurisdiction they had over the child in the first place.

THE COURT: I will explain it again, Mr. Steele. If there is any evidence to the effect, on your side, that there was mild punishment, or any punishment, on those occasions at all, then. it would become material, but on that issue—

MR. STEELE: Well, with that view of the, case, I think it sounds perfectly right.

THE COURT: It is practically useless to put it in.

MR. STEELE: Yes, wholly unnecessary.

MR. O'BANNON: That is what I have been telling them all the time.

MR. STEELE: Well, I am agreeing with you.

THE COURT: Well, I knew you would, Mr. Steele.''

In the face of this record, the basis of this charge of error is not discernible.

Again, defendant complains that the court erred in refusing to allow her to testify to a conversation between her and plaintiff relative to plaintiff's treatment in the Children's Home in New York, on the ground that it might have developed that plaintiff received his injuries before he came to defendant's home, and that such injuries might have existed prior to the time of which he complains.

There was no offer of proof as to what the conversation was, or, showing that it had any bearing whatever on the case. The court ruled that the witness had stated she never had any talk with plaintiff about his eye, and the record shows that the witness had so testified. The court ruled that if she had ever talked with him about his ear, they could go into that, but could not go into the ''general treatment back there,'' referring to the Home in New York. Defendant then testified she had never had any conversation with plaintiff about his ear. It is manifest that the court did not exclude any testimony that was relevant.

The only remaining question concerns the admissibility of the testimony of G. W. Wagner, Sr., Geo. W. Wagner, Jr., Mrs. G. W. Wagner, Sr., and Grace Wagner, in rebuttal, relative to statements made to said witnesses by plaintiff after the lapse of two years from the time the assaults were alleged to have been made. J. W. Swan, defendant's witness, by way of impeachment, testified to alleged statements of plaintiff prior to the institution of this suit. Edward Thompson, another witness for defendant, testified that he had held numerous conversations with plaintiff during the time plaintiff was at defendant's home, and that the boy had never made any complaints of ill treatment by defendant. Other witnesses were permitted to testify to the same effect.

The basis of defendant's objection to the testimony of plaintiff's witnesses, above referred to, is that the evidence offered was hearsay and self-serving. From the trend of defendant's evidence, it is clear that her contention is that plaintiff's story is of recent fabrication and that the complaints made to the Wagners were untrue and made for the purposes of this suit. It is true, as stated in 22 C. J., sec. 193, that:

"It is a well established rule that a statement of a party, whether oral or written, which is of a self-serving nature, is not admissible in evidence in his favor."

But the rule is somewhat different where a witness has been assailed on the ground that his story is a recent fabrication, or that he has some motive for testifying falsely. Proof that he gave a similar account of the transaction when the motive did not exist, before the effect of such account could be foreseen, or when the motive of interest would have induced a different statement, is admissible.

". . . but in order to bring a case within this rule, it must appear that the conversation occurred soon after the transaction, is consistent with the statements made on oath, and contains such fact or facts pertinent

to the issues involved as reasonably furnish to the jury some test of the witness' integrity and accuracy of recollection.'' [40 Cyc., p. 2789.]

In State v. Grant, 79 Mo. 113, l. c. 133, it is held: ''Evidence in corroboration of a witness prior to attack or impeachment, is obviously inadmissible. [State v. Thomas, 78 Mo. 327.] If, however, such attack be made on the character of the witness, it is then admissible to prove that the witness has made statements consistent with those made as a witness. [March v. Harrell, 1 Jones, (N. C.) 329; French v. Merrill, 6 N. H. 465; Coffin v. Anderson, 4 Blackf. 395; Jackson v. Etz, 5 Cow. 314.]''

Defendant, in support of her contention on this point, cites Hooper v. Insurance Co., 166 Mo. App. 209, where it is said, p. 211, et seq.:

''It is when there is appreciable time between the thing which has happened and the words which are spoken of it, that difficulty has arisen.' The thing to avoid is the allowance of a made-up or a colored or highly exaggerated story; for, ordinarily, what a man says in his own favor ought not to be allowed as evidence against his adversary. With this in view, courts have not always allowed the matter of a short time intervening to prevent what one has said of an occurrence being received in evidence, where the circumstances connect the two and also show fabrication to be highly improbable.''

In the case at bar, plaintiff contends that by reason of the fact that all of the time plaintiff resided at the home of defendant he was held in a state of duress and fear, and that because of such fear and duress he refrained from making complaints and was not permitted thereby to speak his mind freely until all such causes had been removed; and that the statements made immediately after such restraints were removed are, in the very nature of things, a part of the *res gestae,* as defined in Brownell v. Railway Co., 47 Mo. 239.

There is substantial testimony of record that plaintiff told of the alleged assaults immediately after he left defendant's home. To this effect was the testimony of Geo. W. Wagner, Jr., all of which was elicited by defendant's counsel on cross examination, and it is therefore in the record without objection. The same is true of the testimony of Geo. W. Wagner, Sr.

The citations of defendant on this point are all to the same effect, and the rules therein stated do not change the conclusions hereinabove declared. We fail to find reversible error in the case.

The judgment is affirmed. All concur.