LEN BISHOP, RESPONDENT, v. MUSICK PLATING WORKS, A CORPORATION, APPELLANT.*—3 S. W. (2d) 256.

St. Louis Court of Appeals. Opinion filed March 6, 1928.

372

*Corpus Juris-Cyc References: Appeal and Error, 3CJ, p. 857, n. 49; 4CJ, p. 827, n. 8; p. 908, n. 63; p. 1018, n. 58; p. 1033, n. 37; p. 1068, n. 22; Damages, 17CJ, p. 721, n. 56; p. 1116, n. 4; Master and Servant, 39CJ, p. 408, n. 61; p. 410, n. 73; p. 1151, n. 71; p. 1240, n. 24; Statutes, 36Cyc, p. 1151, n. 55; Trial, 38Cyc, p. 1472, n. 50; p. 1498, n. 22.

*T. M. Pierce* and *Samuel H. Liberman* for appellant.

*Mark D. Eagleton, John F. Clancy* and *Hensley, Allen & Marsalek* for respondent.

BENNICK, C.—This is an action for damages for personal injuries, sustained by plaintiff while in the employ of defendant, on May 5, 1925, when a piece of metal was thrown from a buffing machine operated by plaintiff, and caused to strike his left eye. The verdict of the jury was for plaintiff, in the sum of $7500; and from the judgment rendered in conformity therewith, defendant, after an unavailing motion for a new trial, has duly perfected its appeal.

The negligence relied upon was that the machine in question had not been safely and securely guarded. although it was so placed in defendant's establishment as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, and could have been safely and securely guarded.

The answer of defendant was a general denial.

Defendant, as its name implies, is a jobbing concern, engaged in the business of polishing, buffing, and plating metal parts that are

designed to go into many types of finished products. Plaintiff was thoroughly experienced in that line of work, and had seen service with defendant at intervals throughout the period of eight years prior to the time when his injury was received.

It is difficult to describe the machine upon which plaintiff's work was done, other than to say that it consisted of a horizontal shaft, situated approximately three feet above the floor, and operated by an electric motor, the entire mechanism being similar in many respects to the polishing machinery ordinarily seen in a shoe repair shop. The motor and all moving parts, other than the shaft and wheels attached thereto, were enclosed in a cast iron jacket. On the horizontal shaft, polishing or buffing wheels of varying sizes were used, depending upon the character of work to be done. The wheels were made out of canvas, walrus, sheepskin, and similar materials; and the particular wheel in use at the time of plaintiff's injury was built up of discs of cotton sheeting, eighteen or twenty pieces of such material, sewed together, forming a section, and three or four sections together making up a wheel.

In using the machine, the wheel was rotated towards the operator at a speed of twenty-four hundred to twenty-six hundred revolutions a minute, from which fact it may be calculated that the particular wheel used by plaintiff, being eight inches in diameter, had a peripheral speed of approximately one mile a minute. In doing his work, it was necessary that the operator stand or sit in front of the machine, and from such position move the object, which he held in his hands, back and forth across the circumference of the revolving wheel.

It appears that defendant had recognized that there was a constant danger that the object being polished might be caught by the wheel, and whirled and thrown; and, consequently, had designed and installed a device, consisting of a metal hood and an adjustable paste board sheet, to protect the employees from such danger, as well as from the inhalation of dust. The hood had an opening towards the operator, so as to expose the surface of the wheel, and such opening could be partially closed by moving the pasteboard sheet, which was held in position by a thumb screw, extending through a slot in the sheet. In addition, there was an adjustable guard proper, formed out of a piece of sheet iron, which was attached to the hood in what appears to have been a vertical position, and could be lowered until it came to within an inch of the top of the wheel or buffer. However, no employee ever interfered with the adjustment of such guard; and at the moment of plaintiff's injury, the condition of the machine was in all respects the same as it had been for the year or more that plaintiff had been last employed in defendant's establishment.

On the occasion in question, plaintiff was engaged in polishing a quarter-inch rod, about nine inches in length, having a turn or hook on either end; and, while so employed, the hook became caught in

the wheel, as it had a tendency to do, was jerked out of his hands, and was whirled around the wheel and thrown through the pasteboard sheet, striking his left eye, and severely injuring it.

There was evidence given by a graduate consulting engineer, who had examined the machine upon which plaintiff was injured, that the hood used upon it was much too large diametrically to afford safe protection, and that the adjustable sheet iron guard installed by defendant could not be brought down near enough to the buffer to close the opening in the hood sufficiently. He testified positively that it was both possible and practicable to guard the machine so as to prevent the object being polished from flying and striking the operator, by providing a hood that would fit the wheel more closely, and by allowing a much smaller opening in the front at the point where the object to be polished was held against the wheel, such latter result to be obtained by permitting the sheet iron to extend down to a horizontal line through the center of the buffer. Plaintiff himself also testified as to the feasibility of such an arrangement, and said that he had seen such guards in use on similar machines, in the city of St. Louis, and elsewhére.

By its first assignment of error, defendant challenges the sufficiency of the evidence to make a case for submission to the jury. Bearing in mind that this action was predicated upon the failure of defendant to observe the provisions of section 6786, Revised Statutes 1919 (requiring that belting, shafting, machines, machinery, gearing, and drums in all manufacturing, mechanical, and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, should be safely and securely guarded when possible), we may simplify the issues by stating that there was substantial evidence that the buffing machine in question was dangerous within the meaning of the statute, that plaintiff was engaged in his ordinary duties about it, and that it was not safely and securely guarded, although such result was possible to be obtained. In fact, defendant does not question such conclusion, but instead argues most earnestly that the accident which befell plaintiff was not of the kind or character intended to be prevented or avoided by the statute; and that it is only where the injury is the result of *actual contact with the machine itself, or with parts of the machine, as distinguished from the material subjected to the force of the machine,* that a recovery may be had by reason of an alleged failure to guard.

Such argument is ingenious, and in a measure novel, although, as we view it, no support may be found for it from the language of the statute itself. We must constantly remember that statutes of this character are highly remedial; and while they are not to be extended beyond their express terms, they are to be liberally construed, so as

to carry into effect the evident legislative intent. Thus it has been held that the statute applies to machinery which is so located as to be dangerous by reason of breakage and flying particles caused by its ordinary operation, when the breakage and flying particles are of such frequent and ordinary occurrence as to give the employer reasonable ground to anticipate injury to his employees. [Phillips v. Hamilton-Brown Shoe Co., 178 Mo. App. 196, 165 S. W. 1183; Strode v. Columbia Box Co., 124 Mo. App. 511, 101 S. W. 1099; Lumatz v. American Car & Foundry Co., 217 Mo. App. 94, 273 S. W. 1089.]

Of course, such cases are not wholly decisive of the question here presented, because, in each of them, the employee was injured by reason of contact with *parts of the machines themselves*. However, it has been expressly decided that if the employer should have reason to believe that the *material* fed into the machine might be thrown back so as to injure the employee, the duty would devolve upon him under the statute to guard against such occurrence (Isaacs v. Smith (Mo. App.), 275 S. W. 555, 559); and this court has held, *sub silento*, at least, that the statute would apply in a case of this general character. [Higgins v. Medart Patent Pully Co. (Mo. App), 240 S. W. 242.]

Consequently, in view of the evidence in this case that the buffing wheels, in their normal and ordinary operation, were likely to catch and throw the articles being polished upon them, and having due regard for the fact that defendant, in recognition of such eventuality, had designed what we may term an insufficient guard for the very purpose of protecting the operators from this danger, we have no hesitancy in holding that the statute, when given a liberal construction, is broad enough to cover the situation here presented, so as to have enjoined upon defendant the duty of protecting plaintiff from the hazard to which he was thus subjected, even though his injury was produced by contact with the *material*, rather than with the *machine itself*.

Defendant, however, makes the further suggestion that, although by section 6786, Revised Statutes 1919, the Legislature required machines in general to be guarded, it recognized a peculiar kind of danger incident to the normal use of polishing wheels or machines, and, by section 6798, Revised Statutes 1919, saw fit to require a specific device, namely, a hood, to be connected with a blower or suction fan to carry off the dust; that the designation of a specific device for the type of machine here involved qualified section 6786, Revised Statutes 1919, the general guarding statute; and that defendant, having complied with the specific statute, may not be penalized for having failed to comply with the general statute.

This contention is wholly untenable. When one statute deals with a subject in general and comprehensive terms, and another deals with a part of the same subject in a more minute and definite manner, the two should be read together, and harmonized, if possible. The fact

that section 6798, Revised Statutes 1919, requires machines generating dust, smoke, or poisonous gases in their operation to be provided with a hood so as to prevent inhalation of such dust or fumes by those employed about the machines, in nowise militates against the conclusion we have reached as to the application of section 6786, Revised Statutes 1919, to the facts at issue. There is no ambiguity in either statute, and no repugnancy between them; and no reason appears why the plain provisions of section 6786, Revised Statutes 1919, should be rejected because of the equally plain provisions of section 6798, Revised Statutes 1919. To the contrary, the latter was intended as an additional safeguard to employees engaged about polishing wheels or machines, and not as a substitute for any other or previous enactment on the subject. In fact, defendant itself had well recognized this very distinction, because, from its own testimony, it appears that it had provided the hood and pasteboard sheet as a means of preventing only the inhalation of dust, while the adjustable sheet iron guard, which came within one inch of the top of the blower, had been designed to prevent objects from being thrown towards the operator by the rapidly revolving wheel.

It follows, therefore, in the light of our disposition of the objections urged by defendant, that a case was made for submission to the jury, and that the peremptory instruction in the nature of a demurrer to the evidence, requested by defendant at the close of the whole case, was properly refused.

Defendant next insists that the court erred in refusing to permit it to show by plaintiff on cross-examination (assuming for the sake of argument that he would have so testified), that if the hood had been placed right up to the machine, and the adjustable guard had been brought all the way down, the machine would have been safely guarded. It occurs to us that the evidence so excluded was admissible, and that counsel for defendant was well within his rights in seeking to elicit such an answer from plaintiff on cross-examination. No judgment should be reversed, however, except for error materially affecting the merits of the action. In this case there is no doubt that before the taking of evidence ended, the question of the sufficiency of the guard provided by defendant was gone into very fully, both on the cross-examination of plaintiff's witnesses, and on the direct examination of defendant's own witnesses. Defendant at no time contended that its guard could be brought lower than to within one inch of the top of the buffer, while plaintiff took the position, as we have already stated, that such guard did not afford safe protection, but that instead it should have extended down to a horizontal line through the center of the buffer. Consequently, in this state of the record, and in view of the fact that the evidence excluded was subsequently brought to the attention of the jury during the examination of the other witnesses, the action of the court here complained of must

be denominated harmless error. [Gilchrist v. Kansas City Rys. Co. (Mo. Sup.), 254 S. W. 161; Bryson v. Baum (Mo. Sup.), 278 S. W. 412; Mullen v. Sensenbrenner Mercantile Co. (Mo. Sup.), 260 S. W. 982; Elstroth v. Karrenbrock (Mo. App.), 285 S. W. 525; Wills v. Sullivan, 211 Mo. App. 318, 242 S. W. 180.]

Criticism is directed by defendant to the giving of instruction No. 1 for plaintiff, which informed the jury in purely abstract terms of the provisions of the guarding statute. There is no suggestion that this instruction did not correctly quote the statute, but only that it had no application to the precise facts of the case at bar, and stated merely an abstract proposition of law. It may be quite true that the instruction should not have been given in the form requested, but inasmuch as it was correct as far as it went, and did not purport to authorize a recovery by either party, the giving of it was not reversible error. [Taussig v. St. Louis & K. R. Co., 186 Mo. 269, 85 S. W. 378; Nephler v. Woodward, 200 Mo. 179, 98 S. W. 488; Wellman v. Metropolitan Street Ry. Co., 219 Mo. 126, 118 S. W. 31; Ford v. Dowell (Mo. App.), 243 S. W. 366; Maescher v. Rosevear (Mo. App.), 285 S. W. 102; Bongner v. Ziegenhein, 165 Mo. App. 328, 147 S. W. 182.]

Defendant next attacks instruction No. 2 for plaintiff, on the measure of damages. Counsel argue that there was no evidence, either as to the extent of plaintiff's loss of earnings up to the time of the trial, or as to any future loss of earnings, and that, consequently, it was improper to allow the jury to consider such elements of damage in arriving at their verdict. In some respects the criticism thus made has a basis in point of fact. However, that plaintiff did lose some time during the period he was under treatment by his physician, is not controverted; and that his injury was of such nature as necessarily to impair his working capacity, is also beyond doubt. In fact, he testified that subsequent to his injury he was discharged by one employer at least because he was slow and could not see very well. In the situation thus presented, he was, as a matter of law, entitled to recover at least nominal damages for loss of earnings both past and future; and if, as defendant insists, the evidence was indefinite as to the exact amount of such loss, the sole fault to be found with the instruction is that it failed to limit plaintiff's recovery for these items to a nominal sum. Consequently, the rule becomes applicable that the mere generality of an instruction on the measure of damages, if it is good as far as it goes, is not reversible error; but that the remedy of the complaining party is to ask an instruction setting forth the proper express limitations or qualifications. [Smith v. Mederacke, 302 Mo. 538, 259 S. W. 83; Johannes v. Becht Laundry Co. (Mo. Sup.), 274 S. W. 377; Powell v. Union P. R. Co., 255 Mo. 420, 164 S. W. 628; Hoover v. St. Louis E. T. Ry. Co. (Mo. Sup.), 227 S. W. 77; Murphy

v. Winter Garden & Ice Co. (Mo. App.), 280 S. W. 444; Steinkamp v. F. B. Chamberlain Co. (Mo. App.), 294 S. W. 762.]

The next assignment of error is directed at the court's refusal of instruction D, requested by defendant. This instruction was on the unpleaded defense of assumption of risk, and told the jury that if they found that defendant was not careless or negligent, and that plaintiff's injuries were suffered as a direct and proximate consequence of an ordinary risk, danger, or hazard incident to the work he was doing, then plaintiff could not recover, and their verdict should be for defendant.

Counsel for defendant base their argument on this point solely on the case of Denkman v. Prudential Fixture Co. (Mo. Sup.), 289 S. W. 591, in which the Supreme Court refused to reverse a judgment for defendant in a guarding case upon the ground that a similar instruction had been given. We notice that what the court really held in that case was that the jury had not been *misled* by the instruction. In our opinion, however, and as we have already pointed out to some extent in the disposition of other questions, there is a vast difference between saying that the giving of an instruction is *harmless* error, and that the refusal of the same instruction is *reversible* error. In cases growing out of the master's violation of a statutory duty, instructions on the doctrine of assumption of risk have always been condemned, because to allow such defense would be to nullify the statute by judicial legislation. But, apart from this, the correct view of the situation to our minds is that in any action founded on the negligence of the master, whenever proof of such negligence appears, as is true here, the defense of assumption of risk falls out of the case, and an instruction upon such theory is improper. Consequently, no error was committed in the refusal of instruction D. [Doody v. California Woolen Mills Co. (Mo. Sup.), 274 S. W. 692; Dietzman v. St. Louis Screw Co., 300 Mo. 196, 254 S. W. 59; Struckel v. Busch Sulzer Bros. Diesel Engine Co. (Mo. App.), 300 S. W. 993.]

The refusal of instruction C, requested by defendant, is also assigned as error, but the point not having been preserved in the brief and argument, may be regarded as having been waived. [Mercantile Trust Co. v. Dulle (Mo. Sup.), 282 S. W. 414; Compton v. Louis Rich Construction Co., 315 Mo. 1068, 287 S. W. 474; Hall v. Morrin (Mo. App.), 293 S. W. 435; Thomas v. St. Louis-S. F. R. Co. (Mo. App.), 293 S. W. 1051.]

It is also argued that the court erred in refusing to discharge the jury and declare a mistrial, because of certain conduct and statements of plaintiff's counsel during the cross-examination of defendant's witnesses, and in his argument to the jury, particularly with reference to the interest of an insurance company in the outcome of the trial. That the Maryland Casualty Company was interested in the defense of the case, was expressly admitted; and we infer from the record

that the members of the jury had been interrogated on their *voir dire* with reference to their connections with said company. Such being true, the jury could not have been prejudiced by being informed of a fact during the course of the trial which they already knew; and, in any event, the insurance company, being the party ultimately concerned in any judgment rendered, was in no position to demand, either that its identity be concealed, or that the fact of its connection with the case be suppressed, so long as plaintiff's attorney acted throughout in good faith. [Snyder v. Wagner Electric Mfg. Co., 284 Mo. 285, 223 S. W. 911; Joblonowski v. Modern Cap. Mfg. Co., 312 Mo. 173, 279 S. W. 89; Zein v. Pickel Stone Co. (Mo. App.), 273 S. W. 165; Miller v. Walsh Fire Clay Products Co. (Mo. App.), 282 S. W. 141; Paepke v. Stadelman (Mo. App.), 300 S. W. 845.]

Moreover, we must also give due regard to the fact that the control of the conduct and language of plaintiff's counsel during the examination of witnesses, and in argument, was a matter resting largely in the sound judicial discretion of the trial judge, and no abuse of such power appearing, it would not be within our province to convict him of error in the rulings made. [Irons v. American Railway Express Co. (Mo. Sup.), 300 S. W. 283; Allen v. Autenrieth (Mo. App.), 280 S. W. 79; Plannett v. McFall (Mo. App.), 284 S. W. 850; Tucker v. Hagan (Mo. App.), 300 S. W. 301; Wair v. American Car & Foundry Co. (Mo. App.), 300 S. W. 1048.]

Lastly, the point is made that the verdict in the sum of $7500, is excessive, although no cases are cited by counsel in support of the contention. Suffice it to say that plaintiff was about forty years of age when injured; that as a result of his injury he has only ten per cent vision in his left eye; that such condition, characterized as glaucoma, is permanent, and cannot be improved by the use of glasses; and that at the time of the trial he displayed symptoms which indicated that his right eye would eventually be similarly affected. In view of such circumstances, and having regard to the awards upheld by the courts in cases of like nature, we clearly do not feel that we would be justified in interfering with the verdict rendered. [Russell v. Missouri Pacific R. Co. (Mo. Sup.), 295 S. W. 102; Knott v. Missouri Boiler & Sheet Iron Works, 299 Mo. 613, 253 S. W. 749; Adams v. Quincy, O., & K. C. R. Co., 287 Mo. 535, 229 S. W. 790.]

Finding no error in the trial of the case prejudicial to defendant's rights, the commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Daues, P. J.*, and *Becker* and *Nipper, JJ.*, concur.