SADIE BARRACLOUGH, as Administratrix of the Estate of LAWRENCE G. BARRACLOUGH, JR., Appellant, v. UNION PACIFIC RAILROAD COMPANY, a Corporation.—52 S. W. (2d) 998.

Division One, September 3, 1932.

*Atwood, Wickersham, Hill & Chilcott* and *E. J. Levis* for appellant.

*T. M. Lillard* and *Watson, Ess, Groner, Barnett & Whittaker* for respondent.

160

HYDE, C.—This is an action under the Federal Employers' Liability Act (U. S. C. A. 51-59) by plaintiff, as the administratrix of the estate of Lawrence G. Barraclough, Jr., for $20,000 damages for his death while in the employ of defendant as a brakeman in interstate commerce. Plaintiff says also that the Boiler Inspection Act (U. S. C. A. 23) applies but assigns no error on that feature of the case. Barraclough was killed at Harper, Wyoming, November 15, 1922. The negligence charged upon which the case was submitted was that there was a storm curtain over the gangway between the engine and tender which was negligently fastened so as to obstruct the passage and the view of Barraclough descending from the engine cab to the ground; that he was negligently required to crawl under this curtain when it was dangerous to do so; that the engine which struck Barraclough failed to sound the bell or whistle as required by the rule and custom of defendant; and negligence under the humani-

tarian doctrine in failing to warn him when he was seen or could, by the exercise of ordinary care, have been seen in a position of peril in time to have done so.

Plaintiff's evidence concerning the accident consisted of the deposition of conductor Burke of the train upon which Barraclough was serving as head brakeman. Barraclough had just been employed and was referred to as a student brakeman. This conductor's evidence was that their train, an eastbound double-header freight train of fifty-six cars, pulled onto the passing track at Harper about 6:30 A. M., to allow a passenger train, also eastbound, to pass them. Harper was merely a passing station on the prairie. There were two main line tracks with a passing track between them, eight feet distant from each, measuring between rails. The overhang of the cylinders of the engines, in use there, was two and one-half feet. The passenger train was late and arrived about eight o'clock. During this wait, Barraclough was resting in the head engine, which was the head brakeman's proper place. The conductor said that, when he saw the smoke of the passenger train which they were to follow, he went to the head engine, told Barraclough that the train was coming, and that Barraclough answered him and started down the gangway on the north side of the engine. His duty was to throw the switch, after the passenger train had passed, so their train would pull out on the main line. The conductor said that he went on toward the front of the engine in order to identify and observe the passenger train; that when he got to the cylinder head of the engine he turned around and looked to see if Barraclough was coming; and that he could see his body pushing out the canvas curtain and could see his feet and the lower part of his legs below the bottom of the curtain. He then heard the passenger train coming on the south track and went on toward the front of the engine. As he did so, he noticed a westbound freight train approaching on the north track, four to six car lengths away. (A car length is about forty feet.) He turned and yelled to Barraclough but he did not appear to hear him. The westbound train was traveling about thirty-five miles an hour and was only about three car-lengths from Barraclough when his feet hit the ground. Barraclough was facing the engine, from which he had descended, with his back toward the north track, and with his cap pushed forward over his eyes. Barraclough readjusted his cap, took one step which faced him to the east, about seven inches nearer the approaching train, and was almost immediately struck by the cylinder head of the engine. He received injuries from which he died.

The passenger train, which was passing on the south track, was traveling up-grade and making a lot of noise, while the freight train on the north track was drifting down-grade with the steam off, making very little noise. The blower of the engine, from which Barra-

clough descended, was also making considerable noise. The north track on which the westbound train approached was straight for a mile and a half and there was nothing to prevent either the conductor or Barraclough from seeing it, that far away, if they had looked. It was clear and cold at the time of the accident and the purpose of the canvass storm curtain was to keep the engine cab warm. The curtain was fastened to the side of the cab by means of nails and "slid back towards the cab on a slide rod at the top." When closed it was tied to the tender grab iron. The witness said that the curtain at that time was tied with wire and knotted pieces of rope; that to get it loose it would have been necessary to untie it and untangle it; and that "it could be untied in time." Plaintiff's theory was that it should have been fastened with a wedge or tied with a rope so that it could have been quickly untied and slid back by Barraclough when he started out, but that, because of being fastened in the manner it was, he crawled out under the bottom of it and was thereby prevented by it from observing the coming train.

It was shown that it was the rule and custom of defendant for a train approaching a standing train to whistle. The conductor made a telegraphic report immediately after the accident in which he said that the train which struck Barraclough whistled 100 yards east of the accident. He later made a detailed written statement in which he said the same thing and also said that the whistle was two long and two short blasts. In his deposition, however, he said that he had not heard any whistle; that he said in his report that the train had whistled in order to save the engineer's job; and that "I had to lie on the Union Pacific to hold my job." His testimony as to whistling was as follows:

"Q. Do you mean to say that he didn't whistle or the fact that you did not hear him whistle? A. I didn't hear him whistle.

"Q. That is as far as you care to go, as it not? A. Yes, sir.

"Q. The fact is he might have whistled and you not heard him, is that not true? A. I could have possibly passed up a whistle of his, sure."

The conductor also said that he would not be able to identify the whistle of the westbound train from that of the passing passenger train. It was shown by defendant that this conductor had been discharged and that a controversy afterward arose between him and the Company. Defendant produced the engineer and fireman of the head engine, who testified that the canvass curtain was back against the engine cab and not tied at all and that the engine which struck Barraclough whistled before it reached their train; the engineer and fireman of the second engine, who said they did not hear it whistle, and testified as to the noise made by the engine blowers and the passenger train; and the engineer, fireman and head brake-

man of the train, which struck Barraclough, who testified that they did whistle near the switch and also at the whistling post a half mile east of it, and that their bell was ringing. The fireman, who was the only man on the south side of the engine which struck Barraclough, said that their engine was only about forty feet from him when he came down out of the gangway and that "it was all done instantly." It was also shown that Barraclough worked for defendant as a brakeman in 1917 and 1918.

The jury found for defendant and from the judgment entered against plaintiff on this verdict plaintiff has appealed. The errors assigned by plaintiff are concerning the admission and exclusion of testimony and instructions given at defendant's request.

The first contention of plaintiff is that the court erred in refusing to allow plaintiff's counsel on cross-examination to ask defendant's witness, plaintiff's divorced husband, father of Lawrence G. Barraclough, Jr., what charges were made against him by plaintiff in the petition upon which she obtained her divorce. The court refused to permit this, saying, "I don't think we can try the divorce suit." Plaintiff's counsel was permitted to cross-examine him about his divorce and subsequent marriages; and show that he did not appear to contest plaintiff's suit against him for divorce. They were also allowed to cross-examine the witness about his feelings and bias by asking him if he deserted his wife, whether he supported her while he lived with her, and if he had not said he would make it hard for plaintiff to recover for their son's death unless she agreed to give him half. The trial court has some discretion to determine how far cross-examination of witnesses upon collateral matters will be permitted and we see nothing improper in the court's refusing to allow questions concerning what was alleged in the divorce petition. [Neal v. Caldwell, 326 Mo. 1146, 34 S. W. (2d) 104; Jones v. St. Louis & San Francisco Ry. Co., 253 S. W. 737; see, also, State v. Baugh, 217 S. W. 277.] Furthermore, this witness knew nothing about the facts of the accident and only testified upon issues which concerned the measure of damages.

Plaintiff's next contention is that the court erred in striking out an opinion, as an expert witness, of the fireman of the engine upon which Barraclough was riding. The fireman testified as follows:

"Q. I will ask you if it is proper and usual on the Union Pacific to fasten that storm curtain around past over to the tank, between the tank and the engine with wire and knotted rope? A. No, sir.

"Q. That would make it dangerous and unsafe, to fasten it that way? Wouldn't it? A. Yes, sir."

Defendant's counsel moved to strike out the answer to the last question and after an argument during which plaintiff's counsel insisted "I think we have a right to ask the witness if that would

have been a proper manner to fasten the curtain—safe manner,'' the court said:

''THE COURT: Let the last question and answer be read. (Last question and answer read by the official court reporter.)

''THE COURT: That question and answer are withdrawn from the consideration of the jury. The objection to it will be sustained by the court because it invades the province of the jury.'' Witness excused.

It will be noted that the fireman's opinion that it would not be proper to fasten the storm curtain, in the manner referred to, remained in the record, and, furthermore, that there is no exception shown in the record to the action of the court in sustaining the motion to strike. We, therefore, overrule this contention.

██ ██ ██ Plaintiff next insists that the court erred in allowing defendant to show that a controversy existed between it and plaintiff's witness conductor Burke. After it had shown that he was discharged for deserting his train, the following question was asked the division superintendent, who discharged him: ''Q. After Mr. Burke was discharged, did you have any controversy with him about back pay?'' Plaintiff's objection to this question was sustained, whereupon the question was asked and plaintiff objected, as follows: ''Q. I am asking if you, personally, as superintendent, had any controversy with him about back pay? Mr. Chilcott: I object to that as incompetent, irrelevant and immaterial and no proper foundation laid. The Court: Objection overruled. To which ruling and action of the court, the plaintiff then and there at the time duly excepted and still excepts. A. Yes, sir.'' Questions were then asked and objections and rulings made as follows: ''Q. What was the controversy between you and Mr. Burke about, after you discharged him? Mr. Chilcott: I object to that as hearsay and incompetent and no proper foundation laid. The Court: I think that is not competent. It is sufficient to show he had a controversy. Mr. Chilcott: That is it exactly. If you go into the trial of the details, we will never get through. Mr. Watson: Very well. Q. Was it something on Mr. Burke's part about this controversy? Mr. Chilcott: I object to that as incompetent, irrelevant and immaterial. The Court: Objection overruled. To which ruling and action of the court the plaintiff then and there at the time duly excepted and still excepts. A. Yes, sir.'' Witness excused.

Plaintiff says that Burke was never asked about any such controversy and, therefore, it was an improper attempt at impeachment without laying any foundation therefor. It is true that a witness cannot be impeached, by showing statements he has made, unless a foundation is laid by asking him if he made such statements. [Whitely v. Stein (Mo. App.), 34 S. W. (2d) 998; Leimkuehler v.

Wessendorf, 323 Mo. 64, 18 S. W. (2d) 445; Kersten v. Hines, 283 Mo. 623, 223 S. W. 586; Gregory v. Cheatham, 36 Mo. 156, but see 40 Cyc. 2719; 28 R. C. L. 636, sec. 221.] Here, however, no statements of Burke were shown, but only the fact that a controversy about back pay had existed between him and the company and defendant was not permitted to show any details of the controversy. It will further be noted that the court said that it was sufficient ''to show he had a controversy'' and that plaintiff's counsel agreed.

There is considerable conflict of authority as to the necessity of laying a foundation to impeach a witness for bias or hostility. ''In some jurisdictions, where ordinarily a foundation must be laid to contradict a witness, his statements or acts which show hostility or bias are considered of a different character, and no foundation is required to be laid. In still other states a distinction is drawn between acts and statements showing hostility or bias, a foundation being required in the latter instance, but not in the former.'' [28 R. C. L. 617, sec. 205; see, also, 20 Ann. Cas. 220, note; 16 A. L. R. 984, note.] It seems reasonable, however, as stated by 2 Wigmore on Evidence, page 343, section 953, that the rule requiring preliminary inquiry of the witness before offering evidence to show his bias ''applies only to utterances, not to conduct or circumstances, such as an assault or an employment.'' Other illustrations of facts or circumstances which it is proper to show on the issue of bias without a preliminary inquiry of the witness are: relationship to a party by blood or marriage, pendency of litigation between the witness and the party against whom he testifies, and a quarrel or trouble between them. (As to going into the details of the quarrel see 2 Wigmore on Evidence, page 338, section 951.) The Missouri decisions do not seem to be in conflict with this rule. This court has recently said that ''the interest or bias of witnesses with respect to the issues on trial is never an irrelevant or collateral matter.'' [State ex rel. National Ammonia Co. v. Daues, 320 Mo. 1234, 10 S. W. (2d) 931; Jablonowski v. Modern Mfg. Co., 312 Mo. 173, 279 S. W. 89.] In Knapp v. Knapp, 183 S. W. 576, this court said ''that proof of misconduct of witnesses in the courtroom, indicating settled ill will toward appellants, should be admitted.'' And in Wills v. Sullivan, 211 Mo. App. 318, 242 S. W. 180, the Kansas City Court of Appeals very clearly stated the rule, as follows: ''Evidence that ill feeling or unfriendliness had arisen between defendant and any witness who testified against her would be admissible to show bias, and as bearing upon the credibility of the testimony. But this would not entitle defendant to introduce evidence as to the facts or details involved in the trouble or the unfriendliness.'' We hold that the trial court properly ruled this question.

Plaintiff also contends that the court erred in permitting the defendant to ask its employees about the penalties the company in-

166

flicted for failure to whistle, where the rules required it, and for making a false statement or false report, and also to question them concerning an investigation which the Railroad Company made after the accident. While plaintiff's objections were sustained to almost all of these questions, which plaintiff's counsel objected to, it is argued that defendant's counsel knew the questions were improper and continued to ask them over again, repeatedly, after the court had sustained plaintiff's objections to them; that this kind of conduct in the trial was prejudicial to plaintiff; and that the court erred in permitting it. Most of the objections of plaintiff were on the grounds that defendant's rules were the best evidence; that the questions were self-serving; that they were incompetent, irrelevant and immaterial; and that they called for conclusions of the witnesses. This testimony was offered because of the charge made by plaintiff's witness, conductor Burke, that he had to lie to hold his job and that he lied in his report to save the engineer's job. Defendant attempted to show that the engineer would not have been discharged for a single failure to sound a whistle; that there was no printed rule as to the penalty; but that there was an established custom concerning first offenses; and that employees were not required or allowed to make false reports. It would appear from the record that the court excluded all incompetent testimony; kept counsel within proper bounds; and that the trial was fairly conducted. Furthermore, the trial court had the benefit of seeing the witnesses and attorneys before it and observing their actions and conduct. It passed upon the matter, in overruling the motion for new trial, where it and the arguments made by defendant's counsel concerning these matters was assigned as a ground for a new trial, and was in a better position to pass on it than an appellate court could possibly be. No abuse of its discretion in this matter appears and we will defer to its ruling. [Moll v. Pollack, 319 Mo. 744, 8 S. W. (2d) 38, l. c. 48; Goyette v. St. Louis & San Francisco Ry. Co., 37 S. W. (2d) 552, l. c. 556; Lewis v. Illinois Cent. Railroad Co., 50 S. W. (2d) 122, l. c. 127.]

■ Plaintiff contends that it was error to give defendant's Instruction 14, which was as follows:

"The court instructs the jury that the mere fact that Lawrence G. Barraclough, Jr., was killed while employed by the defendant, and the mere fact that his administratrix has sued to recover damages therefor, are of themselves no evidence whatever of the defendant's negligence or liability in this case, unless the plaintiff has by a preponderance of the credible evidence in this cause established negligence on the part of the defendant as detailed and described to you in other instructions."

This court, however, has overruled similar contentions concerning instructions in a number of cases. [Acker v. Koopman, 50 S. W. (2d) 100; Hicks v. Vieths, 46 S. W. (2d) 604; Nicholson v. Franciscus, 328 Mo. 96, 40 S. W. (2d) 623; Sharp v. City of Carthage, 319 Mo. 1028, 5 S. W. (2d) 6; Manthey v. Kellerman Construction Co., 311 Mo. 147, 277 S. W. 927; Nahorski v. St. Louis Electrical Term. Ry. Co., 310 Mo. 227, 274 S. W. 1075; Moss v. Wells, 249 S. W. 411.]

▮ Plaintiff next complains of defendant's Instruction 15 upon the ground that it ignored the part of plaintiff's case based upon the humanitarian doctrine. Plaintiff also makes the same complaint concerning Instruction 17. We do not deem it necessary to consider this objection because we do not think that plaintiff made a submissible case under the humanitarian doctrine. The evidence merely shows that Barraclough, without looking, descended from the engine gangway in front of the other train and that he only took one step after he got on the ground.

Plaintiff's witness, conductor Burke, testified as follows:

"Q. That is, he stepped one step back after he got off onto the ground with his back to the north as he stepped one step? A. Yes, sir.

"Q. That was before he looked at all? A. Yes, sir.

"Q. Then he turned to face the east and one step toward the east and was struck immediately then in the face, is that it? A. That step was taken in the turning movement that I have referred to when he turned. He was facing the south and when he turned to the east he had taken a step over toward the other track.

"Q. And that was immediately after he come off of the engine, was it not? A. Yes, sir.

"Q. That he took that step and was then struck in almost a second afterwards, was he not? A. Yes, sir. . . .

"Q. And he was just on the ground for an instant before he was struck; is that not correct, Mr. Burke? A. Yes, sir."

There is no substantial evidence to show that Barraclough could have been seen before the engine struck him, in time for any of the enginemen to have ever done anything to warn him, after he descended from the engine upon which he was riding. At least under the most favorable view of the evidence, this is a matter of mere speculation and conjecture. According to plaintiff's evidence, before he got on the ground he was behind the curtain. Plaintiff was not aided by defendant's evidence, which was that the fireman was closely observing the engine from which he came but did not and could not see him in time to do anything but yell. Furthermore, if Barraclough had stood facing his engine for any length of time while adjusting his cap, the evidence does not show anything about

his actions which would give any indication that he intended to turn and step in front of the train. Plaintiff failed to make a humanitarian case. [Sullivan v. A. T. & S. F. Ry. Co., 317 Mo. 996, 297 S. W. 945; State ex rel. Wabash Ry. Co. v. Bland, 313 Mo. 246, 281 S. W. 690; Sullivan v. G. & N. I. Railroad Co., 308 Mo. 48, 271 S. W. 983; Keele v. A. T. & S. F. Ry. Co., 258 Mo. 62, 167 S. W. 433; Rollison v. Wabash Ry. Co., 252 Mo. 525, 160 S. W. 994; Degonia v. St. L. & I. M. & S. Ry. Co., 224 Mo. 564, 123 S. W. 807.]

■  Plaintiff also objects to Instruction 17 upon the ground that it gave the jury a roving commission. This instruction was as follows:

"The court instructs the jury that if you find and believe from the evidence in this case that Lawrence G. Barraclough, Jr., met his death solely by reason of thoughtlessness on his part, and not through any negligence on the part of the defendant then and in that event your verdict must be for the defendant."

The objection of plaintiff is to the use of the word "thoughtlessness." However, this instruction not only required the jury to find that Barraclough's death was caused *"solely* by reason of thoughtlessness on his part,'' but also that "it was not through *any negligence* on the part of defendant." The issues in this case and what constituted negligence on the part of defendant was fully set forth in plaintiff's Instruction 1. The instructions must be read and construed together. [Acker v. Koopman, 50 S. W. (2d) 100; Hicks v. Vieths, 46 S. W. (2d) 604; Sharp v. City of Carthage, 319 Mo. 1028, 5 S. W. (2d) 6.] When so read and construed we do not think the jury could have been misled or have believed that the word "thoughtlessness" as used referred to anything other than Barraclough's failure to look for an approaching train, where one could be plainly seen, before stepping off of the engine in front of it. [See Baltimore & Ohio Railroad Co. v. Berry (U. S.), 76 L. Ed. 1098, 52 Sup. Ct. 510.]

Plaintiff also criticizes Instruction 18, but since it refers only to the measure of damages and since the verdict against plaintiff must be affirmed, it is not necessary to consider it.

The judgment is affirmed. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by Hyde, C., is adopted as the opinion of the court. All of the judges concur.